O

# United States District Court
# Central District of California

| | |
|---|---|
| RCS UNLIMITED, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PANTHEON HEALTHCARE LTD. et al., <br><br> Defendants. | Case № 2:24-cv-09892-ODW (JPRx) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [25]** |

## I.    INTRODUCTION

Plaintiff RCS Unlimited, LLC moves for entry of default judgment against Defendant Pantheon Healthcare LTD, on RCS's Complaint for breach of contract and breach of express warranty. (Mot. Default J. ("Motion" or "Mot."), Dkt. No. 25.)  For the reasons that follow, the Court **GRANTS** RCS's Motion.

## II.    BACKGROUND

In December 2022, RCS and Pantheon entered into an agreement, part written and part oral, pursuant to which Pantheon agreed to supply RCS with 100,221 boxes of premium, high demand, authentic Cranberry gloves.  (Compl. ¶ 6, Dkt. No. 1.) Pantheon warranted that the gloves would be inspected prior to delivery, confirmed as authentic and authorized for resale in the United States, and fit for their intended purpose.  (*Id.* ¶ 7.)  Pantheon agreed to deliver the gloves to RCS in Los Angeles,

delivery duty paid, for the purpose of storage, logistics, and sale in the United States. (*Id.*) RCS agreed to advance $950,000 to Pantheon for the initial shipments of goods. (*Id.*) Upon RCS's receipt of conforming gloves, RCS would sell the gloves in the United States and RCS and Pantheon would split the profits. (*Id.*)

On February 16, 2023, RCS paid Pantheon $500,000, and on March 9, 2023, RCS paid Pantheon another $450,000. (*Id.* ¶ 9.) From January 25, 2023, through April 17, 2023, RCS received 100,221 boxes of gloves. (*Id.* ¶ 10.) However, the delivered gloves were non-conforming and could not be verified as authentic or as authorized for resale in the United States. (*Id.*) Consequently, RCS could not resell the gloves and had to warehouse them at an expense of $61,457.53. (*Id.* ¶ 12.)

Based on the above allegations, in November 2024, RCS filed this action against Pantheon for breach of contract and breach of warranty. (*Id.* ¶¶ 15–25.) RCS's counsel served Pantheon, a United Kingdon entity, pursuant to the Hague Convention. (Decl. Gary J. Gorham ISO Mot. ("Gorham Decl.") ¶ 3, Dkt. No. 25; Proof Serv. ("POS") Compl., Dkt. No. 13.) Pantheon's CEO, Ricky Smith, acknowledged that Pantheon had been served and would not be retaining a lawyer, as Pantheon intended to represent itself. (Gorham Decl. ¶¶ 4, 8.) On February 28, 2025, Smith sent a letter to the Court, purportedly on Pantheon's behalf, in answer to RCS's complaint. (*Id.* ¶ 9; Order Striking Letter, Dkt. No. 21.) However, entities may not appear pro se in federal courts, nor may parties communicate with the Court via letter. (Order Striking Letter); C.D. Cal. L.R. 83-2.4. Consequently, the Court struck Smith's letter. (Order Striking Letter.)

After six weeks without an appearance from Pantheon, the Court directed RCS to request Pantheon's default. (Mins., Dkt. No. 19.) Upon RCS's request, the Court found service valid and the Clerk entered the requested default. (*Id.*; Default, Dkt. No. 20.) Pursuant to Federal Rule of Civil Procedure ("Rule") 55(b), RCS now moves for entry of default judgment against Pantheon. (*See generally* Mot.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rule 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

### IV. DISCUSSION[1]

RCS satisfies the procedural requirements for default judgment, establishes that entry of default judgment against Pantheon is substantively appropriate, and supports the requested relief.

**A. PROCEDURAL REQUIREMENTS**

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether

---

[1] The Court is satisfied that it has subject matter jurisdiction over RCS's claims pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000. (Compl. ¶ 4; Suppl. Mot. 2–3, Dkt. No. 27.) Additionally, the Court is satisfied that it has specific personal jurisdiction over Pantheon, as Pantheon purposefully availed itself of the privileges of doing business in California by pursuing and contracting with RCS, and by supplying gloves to RCS in California for the purpose of RCS reselling them from California. (Compl. ¶ 5; Suppl. Mot. 3–6.)

the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

RCS meets these requirements. On March 10, 2025, the Clerk entered default against Pantheon as to RCS's Complaint. (Default.) RCS's counsel submits declaration testimony that Pantheon is not an infant or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Gorham Decl. ¶ 12.) Finally, although Pantheon has not formally or legally appeared in this case, RCS sent a copy of the Motion to Pantheon via mail and email. (Cert. Service, Dkt. No. 25.) Thus, RCS satisfies the procedural requirements for default judgment.

**B.    *EITEL* FACTORS**

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). Thus, the Court considers these two factors first.

*1.    Second & Third Eitel Factors*

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). RCS raises two causes of action, for breach of contract and breach of warranty.

To prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff. *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1230 (2023); *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). Here, RCS alleges that it entered an agreement with Pantheon, in which Pantheon agreed to supply RCS with authentic Cranberry gloves for resale in the United States and RCS agreed to pay Pantheon $950,000. (Compl. ¶¶ 6–7, 16.) RCS alleges that, although RCS performed, Pantheon breached the agreement by delivering non-conforming gloves. (*Id.* ¶¶ 9–10, 17–18.) Finally, RCS alleges that Pantheon's breach caused RCS damages in the amount of $950,000 and the cost to warehouse the non-conforming gloves. (*Id.* ¶¶ 10, 12, 20.) Thus, RCS's Complaint, taken as true, adequately pleads a cause of action for breach of contract. *See Geddes*, 559 F.2d at 560 ("[U]pon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

To prevail on a breach of express warranty claim, a plaintiff must prove "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods, (2) the statement was part of the basis of the bargain, and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (citation modified); *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1051–52 (N.D. Cal. 2018). Here, RCS alleges that Pantheon warranted it would deliver authentic Cranberry gloves authorized for resale in the United States. (Compl. ¶¶ 6–8, 22.) RCS also alleges that Pantheon's promises and descriptions of the goods were material, because non-authentic gloves that were not authorized for resale in the United States would be worthless to RCS. (*Id.* ¶¶ 6–8, 10–11, 23–25.) Finally, RCS alleges that Pantheon breached its warranties by delivering gloves that were not authentic and could not be certified as authorized for resale in the United States. (*Id.* ¶¶ 10–11, 24.) Accepting these allegations as true, RCS adequately alleges pleads a claim for breach of express warranty. *See Geddes*, 559 F.2d at 560.

Therefore, as RCS adequately pleads causes of action for breach of contract and breach of warranty on which it may recover, the second and third *Eitel* factors weigh in favor of entering default judgment against Pantheon.

### 2. Remaining Eitel Factors

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Pantheon. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. RCS would suffer prejudice absent entry of default judgment because it would have no recourse against Pantheon's breaches of contract and warranty, and thus no remedy for the injuries sustained from Pantheon's misconduct. Further, as discussed below in the damages analysis, the sum of money RCS seeks is directly proportional to the injuries sustained.

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of default judgment. RCS's allegations are accepted as true on default, and Pantheon may not now "challenge the accuracy of the allegations in the complaint." *Landstar Ranger*, 725 F. Supp. 2d at 922. RCS supports its claims with ample evidence and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Further, in February 2025, Smith acknowledged service of the Summons and Complaint on behalf of Pantheon. He advised RCS that Pantheon would not be retaining counsel and would instead represent itself in this case. However, after the Court informed Smith that entities may not proceed pro se in federal court, (Order Striking Letter), Pantheon made no further attempt to appear or defend in the intervening eight months. Accordingly, nothing in the record suggests Pantheon's failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. However, because Pantheon's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021)

(affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Pantheon on RCS's claims for breach of contract and breach of warranty.

## C. REQUESTED RELIEF

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In the Motion, RCS seeks to recover its actual out of pocket costs incurred from Pantheon's breaches. (Mot. 1–2, 8.) This is consistent with the relief RCS requests in the Complaint, and it is therefore permissible. (Compl., Prayer for Relief (seeking actual and consequential damages, costs of suit, and pre- and post-judgment interest).)

A plaintiff that establishes a cause of action for breach of contract may recover damages that "are a natural result of [the] breach." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004). On a motion for default judgment, a plaintiff seeking money damages must "prove-up" its damages with admissible evidence. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011).

RCS establishes that it paid Pantheon $950,000 and did not receive what it paid for or anything that could be resold. (Compl. ¶¶ 13, 20; Decl. Ken Blakeman ISO Mot. ("Blakeman Decl.") ¶ 9, Ex. E (RCS bank statements reflecting payments to Pantheon), Dkt. No. 25.) RCS also establishes that it incurred $61,394.98[2] in warehousing storage costs before Pantheon retook possession of the non-conforming gloves. (Compl. ¶¶ 10, 12; Blakeman Decl. ¶ 14, Exs. F (storage invoices), L (RCS credit card statements reflecting storage payments).) Therefore, RCS proves that it suffered $1,011,394.98 as a result of Pantheon's breaches of contract and express warranty.

---

[2] Although RCS alleges warehouse expenses of $61,457.53 in the Complaint, (Compl. ¶ 12), RCS seeks and supports $61,394.98 in warehouse expenses in the Motion, (Mot. 8; Blakeman Decl. ¶ 14).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** RCS's Motion for Entry of Default Judgment against Pantheon for breach of contract and breach of express warranty. (Dkt. No. 25.) The Court **AWARDS** RCS **$1,011,394.98** in damages. Judgment will be entered consistent with this order.

**IT IS SO ORDERED.**

November 25, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**